IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA DUGGER, | ) |
| Plaintiff, | ) Case No. 1:21-cv-00892 |
| v. | ) Judge Dan Aaron Polster |
| HONEYWELL INTERNATIONAL, INC., *et al.*, | ) **OPINION & ORDER** |
| Defendants. | ) |

Before the Court is Defendant Mehrez Hached's Rule 12(b)(2) and 12(b)(6) Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (the "Motion"). ECF Doc. 22. For the following reasons, the Motion is **DENIED**.

## BACKGROUND

**A.** **The Underlying Dispute**[1]

Plaintiff Cynthia Dugger was employed by Defendant Honeywell International, Inc. ("Honeywell" or the "Company") in various roles for approximately five years, through February 28, 2020 when her position was eliminated and she was not moved into a new role. ECF Doc. 20 at ¶¶ 17-19, 59. During this time, Ms. Dugger worked out of Honeywell's location in Cleveland, Ohio, which is where Ms. Dugger resided. *Id.* at ¶¶ 7, 8.

At some point in 2019, Ms. Dugger accepted a new position with Honeywell as a Senior Channel Business Manager, and she maintains she was qualified to perform the duties and responsibilities of her new job. *Id.* at ¶¶ 8, 19, 21. In this role, Ms. Dugger was still based in Cleveland, but her work spanned a multistate territory, which included Ohio. *Id.* at ¶ 20.

---

[1] Given the procedural posture of the case, the Court takes the following statement of facts from Ms. Dugger's second amended complaint (ECF Doc. 20) and assumes that the allegations asserted therein are true. *See Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 851 (N.D. Ohio 2018).

When Ms. Dugger transitioned into her new position, she was supervised by defendant-movant Mehrez Hached, who resided in Texas and remotely managed Ms. Dugger's Cleveland-based operations. *Id.* at ¶¶ 9, 23. Mr. Hached's supervisory responsibilities included communicating to Ms. Dugger her business objectives, some of which Ms. Dugger asserts were atypical for the Senior Channel Business Manager position. *Id.* at ¶ 25. Mr. Hached also completed Ms. Dugger's performance review for work that she conducted within Ohio, as well as decided the total compensation and commissions Ms. Dugger would receive in Ohio. *Id.* at ¶¶ 28-29, 42, 43-45, 47. Mr. Hached also made determinations about which sales opportunities and client meetings Ms. Dugger could attend. *Id.* ¶¶ 43-45.

In her new position, Ms. Dugger claims to have experienced gender-based discrimination by Mr. Hached. *Id.* at 42, 43. Mr. Hached repeatedly diverted sales opportunities and client meetings away from Ms. Dugger to a junior male employee with less experience, and Mr. Hached refused to share commissions with Ms. Dugger in accordance with Honeywell's practice and policies. *Id.* at ¶¶ 43-49.

In addition to supervising Ms. Dugger, Mr. Hached also supervised—and, in turn, allegedly discriminated against—Ms. Dugger's colleague, Char Cammans, who had previously been diagnosed with cancer. *Id.* ¶¶ 31-33. Because of her cancer diagnosis, Ms. Cammans was receiving ongoing treatment and required a surgical procedure. *Id.* ¶ 35. Ms. Dugger alleges that Honeywell and Mr. Hached considered Ms. Cammans to have a disability. *Id.* ¶¶ 34, 36.

Ms. Dugger claims to have witnessed Mr. Hached engage in unlawful discrimination against Ms. Cammans on the basis of her disability. *Id.* ¶¶ 33, 37-39. Mr. Hached informed Ms. Dugger that he was intentionally refusing to train Ms. Cammans properly—even though she was new to Honeywell's industry and required support—due to Ms. Cammans' need for ongoing

cancer treatments. *Id.* ¶¶ 33, 37. Additionally, Mr. Hached informed Ms. Dugger that he was creating a false employment record for Ms. Cammans so that he could support Ms. Cammans' termination after Ms. Cammans was absent from work for her surgery. *Id.* at ¶¶ 37, 39.

Ms. Dugger eventually reported to Honeywell Mr. Hached's discriminatory behavior towards herself and Ms. Cammans. *Id.* ¶¶ 40, 48. Ms. Dugger initially made complaints both to Honeywell's Human Resources department and to its Commercial Excellence department. *Id.* ¶¶ 50-52. As some point thereafter, Ms. Dugger filed a written grievance, and she met with the Commercial Excellence Director to discuss her claims of discrimination. *Id.* ¶¶ 54-56.

After filing the discrimination complaints against Mr. Hached, Ms. Dugger claims to have experienced continued discrimination and retaliation. *Id.* ¶¶ 53, 58-68. When Ms. Dugger filed her initial complaints, Mr. Hached refused to split commissions with her, and this decision went against typical company practice. *Id.* ¶¶ 47, 49, 53. Ultimately, Honeywell eliminated Ms. Dugger's position, but the Company did not offer Ms. Dugger an alternative position and instead terminated her employment without investigating the discrimination. *Id.* ¶¶ 58-59, 63, 68.

**B.** **Procedural History**

On March 26, 2021, Ms. Dugger initiated this lawsuit in the Cuyahoga County Court of Common Pleas to recover for the alleged discrimination perpetrated by both Honeywell and Mr. Hached. ECF Doc. 1-1. Honeywell then removed the case to this Court on April 29, 2021, based on diversity of citizenship. ECF Doc. 1 at 1-2. Once the case was in federal court, Ms. Dugger amended her complaint for the first time and added federal causes of action. ECF Doc. 9.

On September 3, 2021, Mr. Hached filed his initial motion to dismiss. ECF Doc. 11. Mr. Hached chiefly argued that the Court lacked personal jurisdiction over him and that Ms. Dugger had failed to allege any particular conduct by Mr. Hached that amounted to discrimination. *Id.*

In response to dismissal motion, Ms. Dugger filed her Second Amended Complaint on September 28, 2021. ECF Doc. 20. Ms. Dugger now alleged that, although Mr. Hached resides in Texas, he is subject to this Court's jurisdiction because Mr. Hached remotely supervised Ms. Dugger, who resides in Ohio. *Id.* ¶ 10. Thus, Ms. Dugger maintains that Mr. Hached both conducted business within Ohio and caused tortious injury within Ohio from without the state. *Id.* Ms. Dugger also noted that Mr. Hached has been physically present within Ohio, although she does not specify when or where this presence occurred. *See id.* Ms. Dugger further added allegations about Mr. Hached's purported discriminatory conduct, which included withholding client meetings from Ms. Dugger in favor a junior male employee, refusing to split commissions with Ms. Dugger in accordance with Company policy and practice, and discriminating against Ms. Cammans on the basis of her disability. *Id.* ¶¶ 35-40, 43-47, 53. Thus, Ms. Dugger brought counts against Mr. Hached for aiding and abetting discrimination and retaliation in violation of Ohio Revised Code § 4112 and retaliation in violation of the Family Medical Leave Act. *Id.* ¶¶ 92-106.

In response to the Second Amended Complaint, Mr. Hached filed the instant Motion and again seeks dismissal based on lack of personal jurisdiction and failure to state a claim against him. ECF Doc. 22. Mr. Hached again argued that the Court does not have personal jurisdiction over him because: (1) none of the bases for personal jurisdiction in Ohio's long-arm statute apply to him; (2) the fiduciary shield doctrine applies; and (3) federal due process requirements cannot be met. *Id.* at 3-10. Likewise, Mr. Hached renewed his argument that Ms. Dugger's allegations still do not pass *Iqbal*/*Twombly* muster under Rule 12(b)(6). *Id.* To support his dismissal motion, Mr. Hached also submitted an affidavit in which he acknowledged that he supervised Ms. Dugger, approved her compensation, and attended a client meeting in Ohio with Ms. Dugger. ECF Doc.

22-1. Mr. Hached also used the affidavit to deny many of Ms. Dugger's allegations and to assert that he was on short-term disability leave when Ms. Dugger's employment was terminated. *Id.*

On September 19, 2021, Ms. Dugger filed her brief in opposition to the Motion. ECF Doc. 24. Ms. Dugger argued that the Court has personal jurisdiction over Mr. Hached because he purposefully availed himself of the laws of Ohio by supervising Ms. Dugger and because the fiduciary shield doctrine does not apply when an out-of-state defendant is alleged to have personally participated in the conduct underlying the claims at issue. *Id.* at 5-11. With respect to the Rule 12(b)(6) branch of the Motion, Ms. Dugger asserted she has pleaded sufficient facts to plausible state claims against Mr. Hached. *Id.* at 12-16.[2]

Mr. Hached filed a reply in support of his Motion on December 3, 3021. ECF Doc. 25. Mr. Hached again argued that the fiduciary shield doctrine immunizes him from Ohio's long-arm statute and that he has not purposefully availed himself of the laws of Ohio. *Id.* at 11-16. Mr. Hached further maintained that Ms. Dugger has not stated a claim against him and refutes the allegations contained in the Second Amended Complaint. *Id.* at 2-11.

## II. PERSONAL JURISDICTION

**A.** **Standard of Review**

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over every defendant. *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) ("Personal jurisdiction must be analyzed and

---

[2] Ms. Dugger appended to her response brief the complaint that Mr. Hached filed against Honeywell for Title VII claims in a Texas district court. ECF Doc. 23-1. Ms. Dugger asserts this complaint establishes that Mr. Hached made misrepresentations in his affidavit because Mr. Hached alleged in the complaint that he was placed on administrative leave by Honeywell and that he was not on short term disability leave when she was terminated. ECF Doc. 23. While Mr. Hached's complaint may present estoppel issues later in this litigation, the Court does not find the complaint necessary to resolve this motion and, therefore, will not consider it.

established over each defendant independently.")). This is because, without personal jurisdiction, the district court has no authority to proceed to an adjudication. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

The burden on the plaintiff is "relatively slight" when a court elects to resolve a Rule 12(b)(2) on the written submissions alone. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007); *cf. Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991) (explaining that a Rule 12(b)(2) motion necessitates an evidentiary hearing only when there is a legitimate factual dispute about the facts giving rise to personal jurisdiction). Thus, to defeat a Rule 12(b)(2) motion, the plaintiff need make only a prima facie showing of personal jurisdiction, and the court must view the pleadings in the light most favorable to plaintiff without regard to any assertions to the contrary. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

The instant motion can be decided on the written submissions alone because there is no legitimate dispute about the facts that Ms. Dugger has alleged regarding existence of personal jurisdiction.[3] Accordingly, Ms. Dugger need only make a prima facie showing of personal jurisdiction for her claim against Mr. Hached to survive this branch of the Motion.

**B.** **Rule 12(b)(2) Analysis**

To determine whether personal jurisdiction can be exercised over a non-resident defendant, a federal court sitting in diversity must apply the law of the forum state. *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018) (citing *Neogen Corp. v. Neo Gen*

---

[3] While the Court is empowered to conduct an evidentiary hearing on Rule 12(b)(2) motions, such a procedure is unnecessary for this case. *Cf. Theunissen*, 935 F.2d at 1465. While Mr. Hached has filed a supplemental affidavit containing additional facts about the underlying case, that affidavit not only fails to create a genuine factual dispute about Mr. Hached's contacts with Ohio, but it also supports the exercise of personal jurisdiction over him. Namely, Mr. Hached admits that he supervised Ms. Dugger during the relative time frame, made decisions about Ms. Dugger's Ohio-based employment, and was physically present in Ohio with Ms. Dugger to supervise a customer meeting. ECF Doc. 22-1 at ¶¶ 6-8, 100-11, 16. Thus, resolution of the Motion on the written submissions alone is appropriate because these admissions, together with Ms. Dugger's allegations, are dispositive.

*Screening, Inc.*, 282 F.3d 883, 887-88 (6th Cir. 2002)). The touchstone of this analysis is on the fairness of forcing the defendant to litigate an action in the forum. *Days Inn*, 445 F.3d at 904 (citing *Schwartz v. Electronic Data Sys., Inc.*, 913 F.2d 279, 294 n.9 (6th Cir. 1990)).

Accordingly, this Court must apply Ohio law, which holds that personal jurisdiction over non-resident defendants is available only if: (1) the long-arm statute confers jurisdiction, and (2) jurisdiction is proper under the Federal Due Process Clause. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). For the reasons that follow, the Court concludes that Ms. Dugger has made a prima facie showing that Ohio's long-arm statute apples to Mr. Hached's conduct, that Mr. Hached's attempt to invoke the fiduciary shield doctrine to avoid the long-arm statute is unavailing, and that the exercise of personal jurisdiction comports with due process requirements.

1. *Ohio's Long-Arm Statute*

Ohio has an enumerated long-arm statute that is not coterminous with federal constitutional limits on personal jurisdiction. O.R.C. § 2307.382(A); *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Thus, a plaintiff must establish which of the nine enumerated bases authorize the court to exercise personal jurisdiction over a non-resident defendant under Ohio law. *See IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 767 (N.D. Ohio 2019) ("For a court to have jurisdiction over a non-resident defendant, the defendant must meet at least one of the criteria provided in the Ohio Long-Arm statute."). The Ohio long-arm statute states, in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state; . . .
>
> (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. . . . [or]

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state[.]

O.R.C. § 2307.382(A).

While Mr. Hached claims that none of the long-arm statute's bases apply to him, Ms. Dugger contends that Mr. Hached's alleged conduct satisfies Sections 1, 4, and 6. The Court agrees with Ms. Dugger and concludes that Ohio's long-arm statute confers jurisdiction over Mr. Hached in Ohio under all the Sections identified by Ms. Dugger.

      a.      **Transacting Business**

Section (A)(1) confers jurisdiction over a non-resident defendant that is "transacting any business in Ohio," which the Ohio Supreme Court has explained is "very broadly worded" and contemplates "having dealings" within the state. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990)). Thus, Section (A)(1) has been found to be satisfied when an out-of-state employee regularly communicates or otherwise works with Ohio-based employees. *See, e.g.*, *The Rightting, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694, *3-4 (N.D. Ohio Feb. 2, 2009) ("Electronic transactions from one state into another are not immune from a court's consideration when determining personal jurisdiction."); *International Paper Co. v. Goldschmidt*, 872 F. Supp. 2d 624, 630-31 (S.D. Ohio 2012) (noting that an out-of-state employee's regular communication with Ohio-based personnel was transacting business in Ohio).

Ms. Dugger has made sufficient allegations for the Court to conclude that Mr. Hached transacted business in Ohio, and Mr. Hached's own affidavit supports this conclusion. More specifically, Ms. Dugger has alleged that Mr. Hached supervised her Ohio-based activities, which

included completing her performance review, deciding which client meetings she could take, and setting her compensation and commissions, and attending at least one client meeting with Ms. Dugger in Ohio. *Id.* ¶¶ 9, 23, 42-47. Mr. Hached's own affidavit confirms that he supervised Ms. Dugger's Ohio-based employment and even attended a client meeting with Ms. Dugger in Ohio. ECF Doc. 22-1 at ¶¶ 6-7. Thus, accepting Ms. Dugger's allegations as true, Mr. Hached had sufficient and continuous business dealings in Ohio by remotely supervising Ms. Dugger.

### b. Causing Tortious Injury

Sections (A)(4) and (A)(6) both authorize personal jurisdiction over an out-of-state defendant who causes a tortious injury within Ohio from outside the state. O.R.C. § 2307.382(A)(4, 6); *see also Jackson v. State St. Bank & Tr. Co.*, 110 Ohio App.3d 388, 674 N.E.2d 706, 710 (1996) ("A determination of long-arm jurisdiction under [Section] 2307.382(A)(4) first entails a finding that the tortious injury occurred in Ohio.") Section (A)(4) further requires a showing that the defendant regularly engaged in business or some other persistent course of conduct, such that the defendant's contact with Ohio was continuous rather than sporadic. *3M Company v. Premium Contractor Sol., LLC*, 3:20-cv-443, 2021 WL 3737908, *6 (S.D. Ohio Aug. 24, 2021). Section (A)(6) requires the out-of-state defendant to have intentionally committed the tortious act with the reasonable expectation that a tortious injury will occur in Ohio, and—like Section (A)(1)—Ohio courts have taken a broad approach to this Section's application. *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012). Moreover, as Ms. Dugger correctly points out, employment discrimination and retaliation are considered torts under Ohio law. *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 768 (N.D. Ohio 2020) ("Under Ohio law, a claim for employment discrimination is treated as a tort claim.").

Ms. Dugger's Second Amended Complaint includes sufficient allegations to conclude that both Sections (A)(4) and (A)(6) are also satisfied. Ms. Dugger has alleged that Mr. Hached committed a tort—*i.e.*, employment discrimination and retaliation—from Texas, and that Ms. Dugger suffered the tortious injury—*i.e.*, lost commission wages and termination of employment—in Ohio. ECF Doc. 20 at ¶¶ 42-49, 53, 58-68. With respect to Section (A)(4), Ms. Dugger has also sufficiently pleaded that Mr. Hached's business dealings with Ohio were ongoing, given that Mr. Hached allegedly supervised Ms. Dugger's employment, set her compensation, and determined which sales meetings Ms. Dugger could take in Ohio. *Id.* at ¶¶ 9, 23, 25, 28-29, 42, 43-45, 47. Likewise, Section (A)(6)'s requirements are met because Ms. Dugger's has alleged Mr. Hached intentionally and willfully discriminated against Ms. Dugger, and a reasonable person could have anticipated being haled to Ohio to litigate these discrimination claims. *Id.* at ¶¶ 42-49.

Moreover, in the context of the instant motion, the Court will not credit Mr. Hached's assertions that he did not discriminate or retaliate against Ms. Dugger. While Mr. Hached affirms that he did not discriminate against either Ms. Dugger or Ms. Cammans and that he was on short-term disability leave when Ms. Dugger was terminated (ECF Doc. 22-1), the Court need not accept such contradictory statements when deciding a Rule 12(b)(2) motion on the pleadings. *See CompuServe, Inc.*, 89 F.3d at 1261-62.

2. ***Fiduciary Shield Doctrine***

Mr. Hached's principle argument against application of the long-arm statute over him is based on the fiduciary shield doctrine. While Mr. Hached provides little analysis to explain why this doctrine applies to him, Mr. Hached claims that he cannot be haled to Ohio to litigate these claims because Ms. Dugger's allegations arise from instances when he was acting in his official capacity as a Honeywell employee. ECF Doc. 22 at 6-7; ECF Doc. 24 at 11-14.

Yet, in the Sixth Circuit, the fiduciary shield doctrine does not automatically immunize an out-of-state corporate agent from personal jurisdiction: "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice[.]" *See Leighton v. Poltorak*, 1:16-cv-2898, 2017 WL 1399839, *6-7 (N.D. Ohio Apr. 19, 2017) (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000)); *see also WCR, Inc. v. Western. Can. Heat Exchanger, Ltd.*, No. 3:18-cv-278, 2021 WL 2336575, at *5 (S.D. Ohio June 8, 2021) ("Although [defendant's] actions were taken in a corporate capacity, he was actively and personally involved in the conduct giving rise to the claims. Therefore, the corporate shield doctrine provides him no assistance in avoiding this Court's exercise of personal jurisdiction over him."). Rather, this doctrine merely prevents the exercise of personal jurisdiction over an out-of-state corporate agent simply because personal jurisdiction can be exercised over the corporation. *Balance Dynamics*, 204 F.3d at 698; *see also SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014).

Hence, Mr. Hached cannot invoke the fiduciary shield doctrine to insulate him from this Court's jurisdiction because Ms. Dugger has alleged that Mr. Hached was significantly involved in the conduct giving rise to the claims at issue in this litigation. Namely, as discussed above, Mr. Hached is said to have discriminated against Ms. Dugger on the basis of her sex and to have retaliated against Ms. Dugger when she reported Mr. Hached's discriminatory conduct to Honeywell. ECF Doc. 20 at ¶¶ 42-49, 47, 49, 53. Thus, although Mr. Hached's actions were taken in a corporate capacity, he was actively and personally involved in the conduct giving rise to Ms. Dugger's claims. Even Mr. Hached acknowledges that the fiduciary shield doctrine does not apply

to "personal torts" (ECF Doc. 24 at 13), which is precisely what the instant action involves.[4] Therefore, the fiduciary shield doctrine provides Mr. Hached no assistance in avoiding this Court's exercise of personal jurisdiction over him.

### 3. *Federal Due Process*

Even when a long-arm statute authorizes personal jurisdiction over an out-of-state defendant, the exercise of personal jurisdiction must comport with the defendant's constitutional right to due process. *Beydoun.*, 768 F.3d at 505. Due process requires that a defendant have "minimum contacts with the forum State such that he should reasonably anticipate being haled into court there." *Schneider*, 669 F.3d at 701 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)) (internal alterations omitted). In turn, such minimum contacts will support an exercise of specific jurisdiction over the defendant—*i.e.*, the district court has jurisdiction over the defendant when the plaintiff's claims arise from or related to a defendant's contacts with the forum state. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).[5] The Sixth Circuit has identified three criteria for specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. United States Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Failure to meet

---

[4] Mr. Hached also argues that the discussion of the fiduciary shield doctrine in *Balance Dynamics Corp*. does not apply to personal jurisdiction analyses. ECF Doc. 24 at 12-13. However, the Court has previously acknowledged that the *Balance Dynamics Corp.* decision does guide the analysis of the fiduciary shield doctrine, *see Leighton*, 2017 WL 1399839 at *6-7, and Mr. Hached has provided no reason for the Court revisit that conclusion.

[5] While the Court is also empowered to exercise general jurisdiction in certain circumstances, Ms. Dugger has not claimed that Mr. Hached is subject to general jurisdiction in Ohio. As such, a separate general jurisdiction analysis is unnecessary.

any one of the three prongs means that personal jurisdiction may not be invoked. *Harris*, 281 F. App'x at 496.

Because Mr. Hached does not address the second or third prong in either of his briefs, the Court considers only the purposeful availment prong and concludes that the Second Amended Complaint alleges sufficient facts to support the exercised of personal jurisdiction over Mr. Hached.[6] While Mr. Hached argues that his contacts with Ohio were *de minimis* (ECF Doc. 22 at 12-13), his supervisory relationship with Ms. Dugger created sufficient contact with Ohio.

Purposeful availment exists when the defendant has engaged in "some overt actions" to create a connection with the forum state. *Beydoun*, 768 F.3d at 506 (quoting *Fortis Corp. Ins. V. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006)). Stated differently, the defendant's contacts with the forum state must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 494 (6th Cir. 2008) (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The purposeful availment analysis is thus designed to protect an out-of-state defendant from being haled into a jurisdiction for random, fortuitous, or attenuated contacts. *Intera*, 428 F.3d at 616.

However, purposeful availment does not require the defendant to have any physical presence in the forum state. *Air Prods & Controls*, 503 F.3d at 551. For instance, the Sixth Circuit has previously affirmed the exercise of personal jurisdiction over out-of-state defendants whose connections with the forum state were established through virtual contacts—*i.e.*, emails, telephone

---

[6] Even though Mr. Hached does not address the second and third prong of the *Means* analysis, the Court notes that both prongs are satisfied. More specifically, the operative facts in the Second Amended Complaint arise from Mr. Hached's contacts with Ohio, given that Mr. Hached created continuous contacts with Ohio based on his supervision of Ms. Dugger and that Ms. Dugger's claims are for discriminatory conduct while acting as her supervisor. *See Intera*, 428 F.3d at 617. Likewise, the exercise of personal jurisdiction over Mr. Hached is reasonable because Ohio has an interest in protecting its citizens from discriminatory employment practices. *Harris*, 281 F. App'x at 496.

calls, facsimiles, or other electronic means. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548 (6th Cir. 2016) (noting the defendant's "semi-regular" contact with his supervisors in the forum state via email and phone calls); *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.").

Thus, the purposeful availment prong has been deemed satisfied when an out-of-state defendant has a remote working arrangement that results in a connection with the forum state. In such remote work cases, the Sixth Circuit has considered whether the out-of-state defendant "created a connection" with the forum state that was "intended to being ongoing in nature" as a result of the remote employment relationship. *AlixPartners*, 836 F.3d at 551 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263-65 (6th Cir. 1996)). Conversely, if the remote employment relationship results in one-off contacts between the out-of-state defendant and the forum state, then personal jurisdiction cannot be found. *Id.*; *see also Perry v. National Ass'n of Home Builders of U.S.*, 2020 WL 5759766, *5 (D. Md. Sept. 28, 2020) ("In remote-work cases, however, a defendant's mere knowledge that an employee happens to reside in the forum state and conduct some work from home does not constitute purposeful availment.").

In assessing whether Mr. Hached has purposefully availed himself of laws of Ohio, the Court finds *Morton v. Advanced PCS, Inc.* to be instructive. There, the Eastern District of Tennessee exercised personal jurisdiction over a Texas-based employer and its Arizona-based HR Director when a Tennessee-based plaintiff-employee brought an FMLA claim against them. *Morton v. Advanced PCS, Inc.*, 3:04-CV-278, 2006 WL 2222683, *1-2 (E.D. Tenn. Aug. 2, 2006). The Arizona-based HR Director file a Rule 12(b)(2) motion, but the court concluded she had

purposefully availed herself of Tennessee law because: (1) she worked for a company that did business in that state, even if the company was headquartered elsewhere; (2) she managed an employee who worked within the Tennessee and conducted weekly telephone calls with that employee; and (3) she decided to discriminatorily terminate the plaintiff-employee's employment in Tennessee. *Id.* at *2.

Similarly instructive is a recent Central District of California case, in which that court found an out-of-state supervisor—like Mr. Hached—purposefully availed himself of laws of the California by creating "virtual contacts" to maintain the supervisory relationship with the plaintiff-employee. *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1216-17 (C.D. Cal. 2020). There, a remote supervisor based in Massachusetts was subject to personal jurisdiction in California in a suit by a plaintiff-employee for sexual harassment, gender discrimination, and retaliation because the defendant-supervisor maintained ongoing contact with the plaintiff-employer via email, phone calls, and text messages. *Id.* The court also noted that the plaintiff-employee was managed at all times by the defendant-supervisor, who was alleged to have engaged in discriminatory conduct that was felt within the forum state. *Id.* As such, the court concluded that purposeful availment had occurred.[7]

Thus, Mr. Hached has purposefully availed himself of the laws of Ohio by maintaining an ongoing supervisory relationship with Ms. Dugger, resulting in sufficient "virtual contacts" with Ohio. In his affidavit, Mr. Hached acknowledges that he knowingly supervised Ms. Dugger's

---

[7] *See also Wright v. Xerox Corp.*, 882 F. Supp. 399, 407 (D.N.J. 1995) (denying a Rule 12(b)(2) motion when a plaintiff-employee alleged that his New York-based supervisor engaged in a retaliatory scheme because the defendant-supervisor had been in telephone contact with the plaintiff-employee when he was based in New Jersey); *Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966-67 (N.D. Ill. 1991) (concluding that a remote supervisor was subject to personal jurisdiction in Illinois when the plaintiff-employee alleged that that the out-of-state supervisor had: (1) traveled to Illinois on one occasion to inform the plaintiff-employee of poor performance; (2) phoned the plaintiff-employee in Illinois to inform him of a potential termination; and (3) mailed the notice of termination to the plaintiff-employee in Illinois).

Ohio-based employment and approved the compensation she would receive in Ohio. ECF Doc. 22-1 at ¶¶ 6, 11, 16. While not dispositive of purposeful availment, Mr. Hached also admits that he traveled to Ohio to attend a customer visit with Ms. Dugger, meaning that he executed his supervisory duties while physically present in Ohio at least on one occasion. *Id.* ¶ 7. Moreover, Ms. Dugger has alleged further details about how Mr. Hached created contacts with Ohio, such as communicating Ms. Dugger's business objectives to her and determining which client meetings Ms. Dugger could attend. ECF Doc. 20 at ¶¶ 28-29, 42, 43-45, 47. Taken together, these facts indicate that it is not only foreseeable, but also reasonable that the Court may exercise personal jurisdiction over Mr. Hached.

Still, Mr. Hached minimizes the quality of his contacts with Ohio, but the Court is not persuaded by Mr. Hached's claim that "acting as [Ms. Dugger's] immediate manager" is "insufficient" to establish purposeful availment. ECF Doc. 22 at 9. Mr. Hached again provides little support for his conclusion, and he instead relies primarily on a Tenth Circuit case in which an out-of-state supervisor's Rule 12(b)(2) motion was granted. *See id.* (citing *Dobbs v. Chevron USA, Inc.*, 39 F.3d 1064, 1066-68 (10th Cir. 1994). Yet, that Tenth Circuit case is readily distinguishable from this dispute because, there, the defendant-supervisor's only connection to forum state was making "minor derogatory comments" about a plaintiff and conducting a single performance review. *Dobbs*, 39 F.3d at 1068. Instead, the Court finds the present scenario to be more akin to *Morton* and *Wallens* because Mr. Hached maintained ongoing and persistent supervision of an Ohio-based employee. Furthermore, as in *Morton*, Mr. Hached was not only employed by a company that conducted business in Ohio, but was also actively participating in Honeywell's Ohio-based business by supervising Mr. Dugger's employment. Mr. Hached directed virtual contacts toward Ohio, and the Court finds that purposeful availment is established.

Therefore, overall, the Court concludes that it may exercise personal jurisdiction over Mr. Hached. This branch of the Motion is accordingly DENIED.

## II. FAILURE TO STATE CLAIM

### A. Standard of Review

When deciding a Rule 12(b)(6) motion to dismiss, the function of the Court is to test the legal sufficiency of the complaint. *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The district court, thus, must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Shoup v. Doyle*, 974 F. Supp. 2d 1058, 1071 (S.D. Ohio 2013) (citing *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012)). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face," and not merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

### B. Rule 12(b)(6) Analysis

In asking the Court to dismiss Ms. Dugger's complaint for failure to state a claim, Mr. Hached articulates two bases for dismissal. First, to defeat the FMLA retaliation cause of action, Mr. Hached repeatedly argues that the allegations in Ms. Dugger's complaint are untrue. Second, for the aiding and abetting claim, Mr. Hached maintains that Ms. Dugger has not pleaded sufficient facts to plausibly allege that he can be held liable. The Court is not persuaded by either of Mr. Hached's arguments and, thus, denies this branch of the Motion for the following reasons.

As an initial matter, the Court rejects Mr. Hached's repeated interjection of contrary facts as the basis for dismissal of the FMLA retaliation claim, as this is contrary to relevant standard for such motions. *See Shoup*, 974 F. Supp. 2d at 1071. While Mr. Hached states that he submitted his affidavit to support only the Rule 12(b)(2) branch of the Motion (ECF Doc. 24 at 2, n.1), he uses

his affidavit to contradict Ms. Dugger's allegations about the FMLA retaliation claim by arguing that he did not know Ms. Cammans had cancer or was taking FMLA leave (ECF Doc. 22 at 11; ECF Doc. 24 at 3-4, 6-7). Yet, the familiar Rule12(b)(6) standard requires the Court to accept Ms. Dugger's allegations as true, and Mr. Hached cannot obtain dismissal simply by alleging a contradictory set of facts.

The Court further concludes that Ms. Dugger has sufficiently pleaded facts to support the aiding and abetting count against Mr. Hached. While Mr. Hached argues that Ms. Dugger has not explained how the alleged aiding and abetting occurred (ECF Doc. 22 at 12; ECF Doc. 24 at 8-10), the Second Amended Complaint specifically alleges that Mr. Hached discriminated against Ms. Dugger on the basis of her sex and evaluated Ms. Dugger based on unfair criteria. ECF Doc. 20 at ¶¶42-43. Accepting these allegations as true, Ms. Dugger has plausibly alleged that Mr. Hached's action contributed to her termination, which Ms. Dugger maintains was unlawful. *Id.* at ¶¶ 58-68).

Therefore, the Rule 12(b)(6) branch of the Motion is also DENIED. Mr. Hached has not articulated any basis for the Court to conclude Ms. Dugger has failed to state a claim against him, and the Court will allow these claims to proceed.

## **CONCLUSION**

Based on the foregoing, Mr. Hached's Rule 12(b)(2) and 12(b)(6) Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (ECF Doc. 22) is DENIED.

**IT IS SO ORDERED.**

*/s/ Dan Aaron Polster*
**Dan Aaron Polster**
**United States District Judge**